## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**DAVID BOYD BROWN,**
**A# 205-051-585,**

      **Petitioner,**

**vs.**                                    **Case No. 4:19cv430-WS-MAF**

**DEPARTMENT OF HOMELAND**
**SECURITY,**

      **Respondent.**
_____/

## ORDER and REPORT AND RECOMMENDATION

The parties are advised that an Administrative Order has been entered, reassigning this case to newly appointed Magistrate Judge Martin A. Fitzpatrick.  ECF No. 14.  The case number has changed as shown above and must now be included on all documents filed to reflect the change in judicial assignments.

Service was directed of the pro se Petitioner's amended petition for writ of habeas corpus, ECF No. 6, filed pursuant to 28 U.S.C. § 2241.  ECF No. 9.  Having concluded that Petitioner's amended petition, ECF No. 6,

demonstrated a prima facie case,[1] Respondents were directed to respond

and show good cause why Petitioner should not be granted the relief

sought.  ECF No. 9.

On March 6, 2020, a response was filed, ECF No. 12, asserting that

the petition should be denied because Petitioner has frustrated his

removal.  ECF No. 12 at 2.  The response also advised that Petitioner had

filed another § 2241 petition in the Southern District of Florida and a

recommendation was pending to deny relief.  *Id.*

An Order was entered reminding Petitioner of the April 6, 2020,

deadline in which to file a reply, if desired, to the response filed by

Respondents.  ECF No. 13.  As of this date, Petitioner has not filed a

reply.[2]

---

[1] Petitioner submitted another § 2241 habeas petition on the form used in this Court.  ECF No. 7.  However, because that petition did not provide the facts necessary to demonstrate a prima facie case, the typed petition which was not provided on the court form, ECF No. 6, was served.

[2] At the time of case initiation, Petitioner was held in the Wakulla County Detention Facility.  ECF No. 1.  Petitioner was still there when the amended petition was filed.  ECF No. 6 at 8.  Thereafter, he filed a notice of change of address, advising that he had been moved to the Baker County Detention Center.  ECF No. 8.  As that is his address of record, that is where the prior Order, ECF No. 13, was mailed.  However, the response states that Petitioner is currently detained at the Krome Processing Center.  ECF No. 12 at 1.  Petitioner has not filed a notice of address change, but the docket also does not reflect that the prior Order was returned to the Court as undeliverable.  Thus, it is presumed that Petitioner received the prior Order.

Case No. 4:19cv430-WS-MAF

**Relevant Facts**

Petitioner alleged that he is a native of Jamaica and entered the United States in 1985. ECF No. 6 at 3. Petitioner received a "final order of removal" on November 17, 2012. *Id.* at 1. He was taken into custody by I.C.E. on March 5, 2019, and has remained in detention since that date. *Id.* Petitioner contends that his removal is not reasonably foreseeable and his continued detention is unreasonable. *Id.* He stated that he had "cooperated fully with all efforts by I.C.E. to remove" him from the United States because he had "signed all documents and provided all information" to his deportation officer. *Id.* at 3.

Respondents have shown that Petitioner was ordered removed to Jamaica on October 17, 2012, ECF No. 12 at 3, and not in November as Petitioner alleged. The order became administratively final when issued because Petitioner waived his right to appeal. *Id.*

Additionally, Respondents note that Petitioner filed this case asserting that he is a native of Jamaica. ECF No. 12 at 2 (citing ECF No. 6 at 3). However, Respondents advise that Petitioner also filed a habeas petition in the Southern District of Florida in which he alleged he was a native and citizen of St. Croix. *Id.*

Case No. 4:19cv430-WS-MAF

Petitioner was initially taken into custody by U.S. Border Patrol in late January 2012 after making inconsistent statements.  ECF No. 12 at 2.  He was detained pending removal proceedings, but ultimately released from detention pursuant to an order of supervision on June 13, 2013.  *Id.* at 2-3.  Throughout 2014 and 2015, Petitioner reported to ICE as required by the order.  *Id.* at 3.

Petitioner was arrested and convicted of two charges and sentenced to an approximate 21 month sentence.  *Id.*  After his release from state custody on March 5, 2019, he was again taken into immigration custody and his order of supervision was revoked.  *Id.* at 4.  He was "served with Warnings for Failure to Depart, as well as Instructions requiring that he assist in his obligation to obtain a travel document for removal."  *Id.*

Respondents have shown that Petitioner has thwarted "efforts to obtain a travel document by alternately refusing to attend interviews with the consulate, providing false names and dates of birth, providing false names and dates of birth of his parents, and generally refusing to provide any verifiable information which would lead to a travel document for his removal, in violation of the Immigration and Nationality Act."  *Id.* at 4.  Specifically, Petitioner has given inconsistent names and different countries

Case No. 4:19cv430-WS-MAF

of origin.  *Id.* at 4-5.  Respondents attached a copy of the petition filed in

the Southern District in which Petitioner claimed to be from "Saint Croy."

ECF No. 12 at 40-41.[3]  Additionally, in this case, Petitioner said he entered

the United States in 1985, but in the Southern District of Florida he claimed

to have entered in 1986.  ECF No. 12 at 41.

Respondents have presented the Declaration of Luis Antonio

Morales, a Supervisory Detention and Deportation Officer with U.S.

Immigration and Customs Enforcement (ICE).  ECF No. 12 at 12.

Mr. Morales states that when Petitioner was first questioned by Border

Patrol officials in 2012, "Petitioner advised that his name was John N.

Smiley and that he was a United States citizen, born in St. Croix on

February 14, 1972."  *Id.* at 13.  "However, record checks indicated that the

identity belonged to a Caucasian male."  *Id.*  During further questioning,

Petitioner said his name was David Boyd Brown and he was a native and

citizen of Jamaica.  *Id.*  He said "his father's name was Jim, a Jamaican,

and his mother's name was Maria, from Haiti."  *Id.*  Removal proceedings

---

[3] Due to the attachments having been filed in multiple cases, the heading
information cannot be read on the Court's online docket.  Thus, all exhibits were opened
simultaneously with the response and are cited as though filed as one document, ECF
No. 12, with the corresponding page number.

Case No. 4:19cv430-WS-MAF

continued and he was ordered removed to Jamaica on October 17, 2012.
*Id.* at 14.

ICE began efforts to obtain a travel document for Petitioner.
However, when Petitioner was interviewed by the consulate of Jamaica on
November 20, 2012, "Petitioner advised that he was born in St. Croix and
was a United States citizen." *Id.* at 14.  Petitioner was then served with
another Form I-229, Warnings for Failure to Depart, and asked by a
deportation officer whether he would be truthful.  *Id.*  Petitioner responded,
"You need to deport me or release me."  *Id.*  He was served with a Failure
to Comply notice on January 29, 2013.  *Id.*

Petitioner was interviewed again by the Jamaican consulate on April
10, 2013.  *Id.* at 15.  Petitioner once again said "he was not from Jamaica
and was a United States citizen."  *Id.*  The following month, Petitioner was
again served with another Form I-229, Warnings for Failure to Depart, and
advised of his obligation to assist in obtaining his travel document.  *Id.*
Because the Jamaican consulate advised the Department of Homeland
Security "that it had insufficient information to confirm Petitioner's
citizenship and would not issue a travel document," Petitioner was released
on an order of supervision on June 13, 2013.  ECF No. 12 at 15.

Case No. 4:19cv430-WS-MAF

Following Petitioner's conviction for robbery with a deadly weapon, ICE officials contacted officials in St. Croix in July 2014, seeking to confirm Petitioner's claims. *Id.* at 15. "No birth record was found for Petitioner, using his name, as well as his aliases, and various dates of birth he had provided DHS officials." *Id.* at 16.

After Petitioner's release from prison, ICE officials returned to seeking travel documents from the consulate of Jamaica. *Id.* On March 21, 2019, the consulate requested additional information; however, "Petitioner refused to appear for an interview with the consulate" on May 15, 2019. *Id.* In June 2019, "DHS sent Jamaican authorities a request for Petitioner's birth certificate, along with his fingerprints, aliases and various dates of birth." *Id.* In July, the consulate requested additional information. *Id.* Thus, Petitioner was again interviewed by a deportation officer in September 2019. *Id.* "In a sworn statement, Petitioner now claimed that his mother's name is Zepora Brown, in St. Croix, and his father Jim Brown." *Id.* at 16-17. He said that he "lived in Chocolate City in St. Croix," but "there is no Chocolate City in St. Croix." *Id.* at I7. An internet search did reveal that there "is a Chocolate City on a St. Croix Street in Minnesota, where Petitioner was first encountered by law enforcement." *Id.* "On

Case No. 4:19cv430-WS-MAF

September 23, 2019, a summary of Petitioner's aliases and dates of birth
was sent to Jamaican authorities." *Id.*

Petitioner was interviewed once again by a deportation officer in
October 2019.  ECF No. 12 at 17.  He "claimed to be born in St. Croix,
having entered the United States via Canada at the age of 14 with his
adopted mother." *Id.*  Petitioner "had no proof or documents showing
where he was born or of his true name." *Id.*  A deportation officer
attempted to serve Petitioner with another Notice of Failure to Comply on
October 24, 2019, but Petitioner "refused to sign it." *Id.*

In November 2019, a deportation office again met with Petitioner to
request Petitioner produce "verifiable information relating to his identity."
*Id.*  Petition refused to do so and was served with another Form I-229.  *Id.*
Petitioner refused to sign the document.  *Id.*

## Analysis

Petitioner is not challenging the final order of removal in this §2241
petition but, rather, seeks release from detention pursuant to <u>Zadvydas v.
Davis</u>, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001).  This Court
has jurisdiction over this petition.

Case No. 4:19cv430-WS-MAF

In <u>Zadvydas</u>, the United States Supreme Court was asked to decide whether 8 U.S.C. § 1231(a)(6) authorized indefinite detention of a removable alien.[4]  The Court held that the continued detention of legal permanent aliens beyond the mandated 90-day removal period was permissible under the Constitution, but only for as long as was "reasonably necessary to bring about that alien's removal from the United States."  *Id.*, at 689, 121 S. Ct. at 2498.  The Court concluded that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."  *Id.*, at 699, 121 S. Ct. at 2503.  For the sake of uniform administration by the federal courts, the Court held that "the presumptive period during which the detention of an alien is reasonably necessary to effectuate his removal is six months; after that, the alien is eligible for conditional release if he can demonstrate that there is 'no significant likelihood of removal in the reasonably foreseeable future.'"  <u>Clark v. Martinez</u>, 543 U.S. 371, 125 S. Ct. 716, 722, 160 L. Ed. 2d 734 (2005) (quoting <u>Zadvydas</u>, 533 U.S. at 701, 121 S. Ct. at 2505).

---

[4] Section 1231(a)(1)(A) provides the government with a 90-day "removal period" in which to remove an alien from the United States.  8 U.S.C. § 1231(a)(1)(A).

In <u>Clark v. Martinez</u>, the Court extended its interpretation of 8 U.S.C. § 1231(a)(6) to inadmissible aliens.[5]  The Court found no reason why the period of time reasonably necessary to effect removal would be longer for an inadmissible alien than for a resident alien.  <u>Clark</u>, 543 U.S. at 386, 125 S. Ct. at 727; *see also* <u>Benitez v. Wallis</u>, 402 F.3d 1133, 1135 (11th Cir. 2005).  Thus, the six month presumptively reasonable period of time is the same for both admitted and inadmissible aliens.  <u>Benitez</u>, 402 F.3d at 1135.  Accordingly, under <u>Clark</u> and <u>Zadvydas</u>, when an alien shows he has been held more than six months beyond the removal period and his removal is not reasonably foreseeable, a § 2241 petition should be granted.  <u>Clark</u>, 543 U.S. at 386-387, 125 S. Ct. at 727; <u>Benitez</u>, 402 F.3d at 1135 (relying on <u>Clark</u> to hold that an inadmissible alien must be released and paroled into the country if he has been detained beyond the six month removal period and his removal is not reasonably foreseeable).[6]

_____

[5] The relevant statute provides: "An alien ordered removed who is inadmissible under section 1182 of this title, removable [for violations of nonimmigrant status or entry conditions, violations of criminal laws, or threatening national security] or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)."  8 U.S.C. § 1231(a)(6) (quoted in <u>Benitez v. Wallis</u>, 402 F.3d 1133, 1134 (11th Cir. 2005)).

[6] An alien must be detained during the "removal period."  8 U.S.C. § 1231(a)(2).

Zadvydas established a burden-shifting analysis when considering § 2241 habeas petitions.  After the presumptive six month removal period has expired, an alien must provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Zadvydas, 533 U.S. at 701, 121 S. Ct. at 2505.  Thereafter, "the Government must respond with evidence sufficient to rebut that showing." *Id.*

Here, Petitioner's factual allegations in the petition[7] were sufficient to meet his burden under Zadvydas.  ECF No. 6.  Petitioner said that he had been detained for more than six months, had "cooperated fully with all efforts by I.C.E. to remove" him, but said that his removal was "not reasonably foreseeable."  *Id.* at 1.

The burden shifted to Respondents to rebut that showing and demonstrate why the petition should not be granted.  Respondents have come forward with evidence demonstrating that Petitioner has, at times, refused to cooperate in the removal process by refusing to sign documents

---

[7] Petitioner did not sign the amended petition under penalty of perjury or otherwise declare that the assertions made were true and correct.  ECF No. 6.  Furthermore, Petitioner was required to file the amended petition because his original petition, ECF No. 1, was unsigned and contained numerous blanks.  *Id.* at 3.

and be interviewed.  At other times, Petitioner has hindered removal efforts by providing false and inconsistent information.  Respondents have shown that Petitioner has acted to prevent his removal.

As this Court has previously recognized,[8] the relevant statute provides that the "removal period may be extended and the alien may remain in detention, 'if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.'"  8 U.S.C. § 1231(a)(1)(C) (quoted in Vaz v. Skinner, 634 F. App'x 778, 781 (11th Cir. 2015)).  When the alien has been the cause of his own delay, habeas relief is properly denied.  See Sango-Dema v. District Director, I.N.S., 122 F.Supp.2d 213 (D. Mass. 2000) (concluding that "an alien cannot trigger [a constitutional right to be free from indefinite detention by the INS] with his outright refusal to cooperate with INS officials.").

---

[8] See, e.g., Oyeyemi v. Holder, No. 4:11CV145-SPM/WCS, 2011 WL 2837711, at *3 (N.D. Fla. June 30, 2011); O'Connor v. Gonzales, No. 4:06CV361 SPM, 2006 WL 3804724, at *5 (N.D. Fla. Dec. 21, 2006); Oladokun v. Holder, No. 4:11CV200-RH/WCS, 2011 WL 4595994, at *5 (N.D. Fla. Sept. 15, 2011), report and recommendation adopted, No. 4:11CV200-RH/WCS, 2011 WL 4595800 (N.D. Fla. Oct. 4, 2011), aff'd sub nom. Oladokun v. U.S. Atty. Gen., 479 F. App'x 895 (11th Cir. 2012).

Case No. 4:19cv430-WS-MAF

In <u>Powell v. Ashcroft</u>, 194 F.Supp.2d 209 (E.D.N.Y. 2002), the court

noted that <u>Zadvydas</u> was concerned with the constitutionality of

§ 1231(a)(6) where aliens were in "'deportation limbo because their

countries of origin had refused to allow [them] entrance.'"  <u>Powell</u>, 194

F.Supp.2d at 211 (citing <u>Sango-Dema</u>, 122 F.Supp.2d at 221 and

explaining Zadvydas).  The court found <u>Zadvydas</u> to be inapplicable

because it "did not discuss the constitutionality of Section 1231(a)(1)(C)

and the tolling of the removal period during the time of an alien's

non-cooperation."  <u>Powell</u>, 194 F.Supp.2d at 212 (citing <u>Guner v. Reno</u>,

2001 WL 940576 (S.D.N.Y. Aug. 20, 2001)).  Thus, where an alien's

actions or refusal to act thwarts his removal, and where it is likely that he

could be removed if he cooperated, a habeas petition should be denied.

<u>Powell</u>, 194 F.Supp.2d at 212.

The Eleventh Circuit has also affirmed that a three year period of

detention is not unreasonable when "Petitioner's own acts and failure to

make timely application in good faith for travel documents has prevented

his removal."  <u>Vaz</u>, 634 F. App'x at 782.  When Petitioner acts to prevent

his own removal, he is responsible for his own prolonged detention.

"Because Petitioner is responsible for thwarting his removal, he cannot

show that there is no reasonable likelihood that he will not be removed in the reasonably foreseeable future if he cooperates with" ICE and answers the questions posed to him with truthful information.  634 F. App'x at 782; *see also* Archibald v. I.N.S., 2002 WL 1434391, *8 (E.D.Pa. July 1, 2002) (finding the case factually distinguishable from Zadvydas where "Archibald's detention [was] a direct result of his seeking relief from deportation" and holding that because his indefinite detention was a result of his requesting a stay, he could not "be heard to complain[] that the time period during which he has been detained constitute[d] a denial of due process."); Thevarajah v. McElroy, 2002 WL 923914 (E.D.N.Y. Apr. 30, 2002) (holding that petitioner's nearly five years in INS custody was constitutional under Zadvydas because the continued detention was lengthened largely because of petitioner's own actions); Linares v. Dep't of Homeland Sec., No. 4:13-CV-01501-WMA, 2014 WL 644382, at *5 (N.D. Ala. Feb. 19, 2014) (holding that petitioner's refusal to board flights to Venezuela tolled the removal period and dismissing habeas petition).

Here, the unrebutted evidence shows that Petitioner has not cooperated in removal efforts.  He has given contradictory information and has refused to answer additional questionnaires.  Thus, Petitioner cannot

complain about his continued detention because he is the cause for the delay.  It appears that Petitioner could have been removed in 2019 if he had provided consistent and truthful information.  Accordingly, Petitioner's six-month period of removal pursuant to <u>Zadvydas</u> has been tolled as permitted by 8 U.S.C. § 1231(a)(1)(C).  The amended § 2241 habeas petition should be denied without prejudice.

**RECOMMENDATION**

It is respectfully **RECOMMENDED** that Petitioner's petition for writ of habeas corpus, ECF No. 6, be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on April 28, 2020.


 S/    Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**


Accordingly, it is **ORDERED** that the Clerk of Court shall mail a copy of this Report and Recommendation to Petitioner at his address of record

Case No. 4:19cv430-WS-MAF

as well as to Petitioner at the address provided by Respondents:  Krome

Service Processing Center, 18201 SW 12th Street, Miami, FL 33194.[9]

**DONE AND ORDERED** on April 28, 2020.

**S/   Martin A. Fitzpatrick**
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations.  Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.   A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.  If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**

---

[9] ECF No. 12 at 11.